## DECLARATION OF SPECIAL AGENT JEREMY GRUBE
## IN SUPPORT OF COMPLAINT FOR FORFEITURE IN REM

### INTRODUCTION

1. I am a Special Agent with the U.S. Department of Homeland Security, Homeland Security Investigations (HSI) and have been employed as such for approximately seventeen years. HSI is one of the agencies within the United States Government responsible for the enforcement of federal controlled substance laws. As an agent with the HSI, I have personally conducted and participated in dozens of investigations that have resulted in the arrests and convictions of people responsible for trafficking illegal drugs and laundering of monetary instruments. Based on my training and experience as an agent with HSI, I am familiar with the means and methods that drug traffickers use to import and distribute illicit drugs, and I am familiar with the support and assistance that drug trafficking organizations require to conduct their illegal activities. I have also become knowledgeable about the criminal statutes of the United States and the federal controlled substance statutes and money laundering statutes, in particular.

2. I am a case agent assigned to the investigation of the drug trafficking and money laundering activities of MARIE UM and her co-conspirators. I am familiar with the evidence in the case. The facts set forth in this declaration are based on my personal knowledge, information supplied to me by other law enforcement personnel, and other sources of information. I am familiar with all aspects of this investigation but have not set forth every fact about this investigation. This declaration is intended to show merely that there is sufficient probable cause for the requested forfeiture and does not set forth all my knowledge about this matter.

3. Based on my training and experience and the facts as set forth herein, there is probable cause supporting the forfeiture of $1,450 in United States Currency, and $17,110 in Canadian Currency seized from MARIE UM's residence on July 17, 2015.

### PROPERTY SUBJECT TO FORFEITURE

4. This declaration is submitted for the limited purpose of supporting a Civil Complaint for Forfeiture In Rem made by the United States of America authorizing the forfeiture of the following:

   A. Approximately $17,110 in Canadian Currency;

   B. Approximately $1,450 in United States Currency.

### FACTS SUPPORTING PROBABLE CAUSE

5. A joint international investigation between the United States and Canadian law enforcement determined that VIVAS CERON (hereinafter "CERON") was the leader and organizer of an international drug trafficking organization (hereinafter "DTO") and did so

while incarcerated in the Drummond Institution, a medium security prison facility in Quebec, Canada.

6. CERON directed co-conspirators, including MARIE UM, to ship controlled substances (including fentanyl and analogue controlled substances) from Canada and China to locations throughout the United States, and in particular, North Dakota. CERON attempted to remain anonymous by communicating through various email accounts and by using a communication device application called WICKR, which is encrypted and designed to ensure communications remain secret and does not require a user to reveal their actual name.

7. The investigation started in August 2014, when agents with the United States Drug Enforcement Administration (DEA) initiated an online undercover investigation into the organization. As that investigation progressed, there was a fentanyl overdose death in North Dakota on January 3, 2015. The investigation into this death led to the arrest of a number of people in North Dakota and Oregon. With respect to the overdose death in North Dakota, local North Dakota suppliers identified BRANDON HUBBARD (hereinafter "Hubbard") of Oregon as the source of the fentanyl. In turn, HUBBARD identified his source of supply as CERON, who was in prison in Canada. HUBBARD identified email accounts and WICKR usernames for law enforcement that he used to communicate with CERON to order fentanyl for the purpose of further distribution. An HSI undercover agent assumed the identity of HUBBARD on email and WICKR and began their undercover investigation.

8. The DEA and HSI undercover investigations started independently, but once law enforcement realized they were targeting the same international DTO, they merged their investigations and continued to coordinate with law enforcement in Canada.

9. In August of 2014, an undercover agent from DEA began communicating with CERON via undercover email communications. From August 2014 through September 2014, DEA undercover agents sent numerous wire transfers via Western Union to CERON in exchange for fentanyl, which was delivered purportedly for the purpose of further distribution.

10. In January 2015, HSI agents began their investigation after the fentanyl overdose death of Bailey Henke, age 18, in Grand Forks, North Dakota. The investigation revealed numerous co-conspirators in North Dakota and identified the source of the fatal dose of fentanyl was from HUBBARD of Portland, Oregon. HUBBARD informed agents he had been communicating with the source via electronic mail and WICKR. A HSI undercover agent assumed the identity of HUBBARD and began communicating with CERON.

11. In February and March 2015, the HSI undercover agent negotiated a purchase of beta-hydroxy-thiofentanyl with CERON.

12. In April 2015, the HSI undercover agent negotiated a purchase of fentanyl with CERON. The undercover agent sent $10,000.00 in Bitcoin virtual currency to a Bitcoin address as directed by CERON. A shipment of fentanyl, as confirmed by subsequent laboratory testing, was then sent from China to the undercover agent in Oregon.

13.     In May 2015, the HSI undercover agent negotiated another purchase of fentanyl with CERON wherein the undercover agent sent partial payment to a Bitcoin address and $7,000.00 cash to Quebec, Canada via Fed-Ex.

14.     On June 3, 2015, law enforcement officials from the Drummond Institution searched the jail cell of CERON and recovered a phone, SIM cards, and various documents related to the distribution of controlled substances including notes of the undercover names, undercover addresses, and tracking numbers that correspond with illicit shipments of controlled substances, including fentanyl delivered to both undercover agents.

15.     CERON was ordered to be deported from Canada to Colombia. On July 17, 2015, members of the Transnational Criminal Investigative Unit (TCIU) in Panama arrested CERON at the Tocumen International Airport, where his plane had stopped, pursuant to a provisional arrest warrant requested by the U.S. Attorney's Office in the District of North Dakota.

16.     After CERON was served with the provisional arrest warrant and read a statement of the charges against him, HSI and DEA agents were given an opportunity to conduct a post arrest interview with CERON. Agents read CERON his Miranda Rights and CERON acknowledged his rights, signed the Miranda Warning, and agreed to speak with law enforcement agents.

17.     CERON acknowledged his involvement in the DTO and stated that he did so while incarcerated in the Drummond Institution, a medium security prison facility in Quebec, Canada. CERON stated he was responsible for assisting in the distribution of fentanyl, acetyl fentanyl, and additional controlled substances to multiple customers located throughout the United States. CERON stated that he utilized multiple aliases to include Mountain, Joe Bleau, and Apexpharma during his involvement in drug trafficking activities. CERON confirmed that he arranged the distribution of controlled substances to "PDXBLACK", an alias used by HUBBARD. CERON confirmed that he arranged the distribution of controlled substances to email accounts and WICKR usernames utilized by HSI and DEA undercover agents.

18.     CERON acknowledged that MARIE UM was a co-conspirator in the DTO he led, that MARIE UM participated in the procurement and distribution of fentanyl from China and Canada into the United States, and that MARIE UM also obtained drug proceeds for the DTO from the illegal distributions of fentanyl.

19.     During the investigation, agents learned that MARIE UM received multiple wire transfer/drug proceeds from co-conspirators located in the United States, Canada, and China. A review of email accounts utilized by MARIE UM further confirmed a large portion of the wire transfers were conducted in furtherance of the distribution of controlled substances and money laundering conspiracy.

20.     On July 17, 2015, the Royal Canadian Mounted Police (hereinafter "RCMP") executed a search warrant at MARIE UM's residence, located at 9067 Tolhurst Street, Montreal, Quebec, in Canada. RCMP seized several evidentiary items that confirmed MARIE UM's

involvement with the DTO led by CERON. Agents also seized $1,450 in United States Currency and $17,110 in Canadian Currency from MARIE UM's bedroom.

21. In August 2016, RCMP turned over the $1,450 in United States Currency and $17,110 in Canadian Currency seized from MARIE UM to agents in the United States. The currency has since been maintained as evidence in the secure evidence room located at the Grand Forks Narcotics Task Force, 1100 North 47th Street Suite 100, Grand Forks, North Dakota.

22. On September 21, 2017, MARIE UM (and her co-conspirators) were indicted in United States District Court, for the District of North Dakota. MARIE UM was charged with: Conspiracy to Possess with Intent to Distribute and Distribute Controlled Substances and Controlled Substance Analogues Resulting in Serious Bodily Injury and Death (Count One); Conspiracy to Import Controlled Substances and Controlled Substance Analogues into the United States Resulting Serious Bodily Injury and Death (Count Two); and International Money Laundering Conspiracy (Count Four). See United States v. Zhang et al., Doc. 2, 3:17-cr-00206 (D.N.D. Sept. 21, 2017[1]).

23. During a March 13, 2018, interview, MARIE UM told authorities that the defendant currency seized from her residence, came from a female drug trafficker from Ontario via mail. Agents confirmed said currency was received in furtherance of the DTO.

24. In April 2021, MARIE UM was extradited from Canada to the United States, arrested in the District of North Dakota, and arraigned. (See Zhang et al., Doc. 205, Minute Entry of Arraignment, 3:17-cr-206 (D.N.D. Apr. 21, 2021.)

25. On November 22, 2021, agents interviewed XUAN NGUYEN (hereinafter "NGYEN"), an indicted co-conspirator. NUGYEN confirmed he assisted CERON, MARIE UM, and others, in this drug and money laundering conspiracy. On multiple occasions, NGUYEN received fentanyl powder from MARIE UM, had the fentanyl powder manufactured into pills laced with fentanyl, and later provided MARIE UM with the pills laced with fentanyl.

26. On March 14, 2023, agents interviewed VANNEK UM (hereinafter referred to as VANNEK), MARIE UM's brother and indicted co-conspirator. MARIE UM told VANNEK she collected money for CERON and asked VANNEK to assist with money collection and the mailing of packages. VANNEK agreed and on several occasions received money transfers from people in the United States, Canada, and China. On three to four occasions, VANNEK mailed packages containing pills to the United States. MARIE UM paid VANNEK to receive money transfers and mail packages to the United States.

27. On April 24, 2023, a North Dakota federal jury convicted MARIE UM for her role in this DTO, finding her guilty of all three counts (as more fully described at ¶22 herein) in violation of 21 U.S.C. § 846 - Conspiracy to Possess with the Intent to Distribute a Controlled Substance; 21 U.S.C. § 963 - Conspiracy to Import Controlled Substances and Controlled

---

[1] A Superseding Indictment was filed on January 18, 2018, with no changes to MARIE UM's indicted offenses. (Doc. 50.)

Substance Analogues into the United States Resulting in Serious Bodily Injury and Death; and 18 U.S.C. § 1956(h) - Money Laundering Conspiracy. As a member of this DTO, MARIE UM was found to be responsible for the importation, manufacture, and distribution of fentanyl from China, to the United States and Canada, resulting in multiple overdose deaths. MARIE UM was sentenced on September 6, 2023, to 23 years imprisonment. (See Zhang et al., Doc. 435, Jury Verdict, (D.N.D. Apr. 24, 2023) and Doc. 497, Judgment In A Criminal Case, (D.N.D. Sept. 6, 2023).

28.     Based on the information set forth in this declaration, probable cause exists to believe that the currency seized from MARIE UM's residence on July 17, 2015, specifically described herein in paragraph 4, are proceeds from the international controlled substance and money laundering conspiracy she was convicted of, and that these funds are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6). Accordingly, your declarant further submits a preponderance of the evidence exists that defendant currency is proceeds from the international controlled substance and money laundering conspiracy.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: November 15, 2024.

_____
Jeremy Grube
Special Agent
Department of Homeland Security